IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

AUBREY E. HENRY, and
DEBORAH V. HENRY,

    Plaintiff,

v.                                                                                                               **CIVIL ACTION NO. 3:06-CV-33**
                                                                                                                  **(BAILEY)**

JEFFERSON COUNTY COMMISSION, et al.,

    Defendants.

## ORDER DENYING MOTION FOR RECONSIDERATION

The above styled case is currently before the Court on plaintiffs' Motion to Vacate Order on Motion for Summary Judgment [Doc. 398]; Ledge Lowe Homeowner's Association, Joyce Ann Lewandowski, William E. Lewandowski, Shepherdstown Men's Club Foundation, Inc., and Richard Super's (collectively "Shepherdstown Defendants") Response in Opposition [Doc. 399]; Jefferson County Commission and the Jefferson Planning and Zoning Commission's (collectively "Jefferson Defendants") Response in Opposition [Doc. 400]; and plaintiffs' replies [Docs. 401, 402]. After review of the record, the arguments of the parties, and the relevant law, the Court finds that plaintiffs' Motion to Vacate Order on Motion for Summary Judgment [Doc. 398] should be **DENIED**.

## BACKGROUND

On April 14, 2009, the Court issued an Order granting the Motion for Summary Judgment by Shepherdstown Men's Club, Ledge Lowe Homeowners' Association, William

1

Lewandowski, Joyce Ann Lewandowski, Miriam Wilson, and Richard Super (collectively "Shepherdstown Defendants") [Doc. 291]; denying plaintiffs' Motion for Partial Summary Judgment [Doc. 321]; granting the Motion for Summary Judgment by the Jefferson County Commission and the Jefferson Planning and Zoning Commission [Doc. 323]; and granting the Motion for Summary Judgment by defendants William Lewandowski, in his official capacity, Dan Markin, John Simms, and Thomas Kane [Doc. 324].

On July 24, 2009, plaintiffs filed a Rule 60(b) Motion to Vacate this Court's Summary Judgment Order [Doc. 398]. In their motion, plaintiffs argue that the Supreme Court's ruling in **Caperton v. A.T. Massey Coal Co., Inc.**, __ U.S.__, 129 S.Ct. 2252 (June 8, 2009) merits reconsideration of this Court's April 14, 2009 Order. Specifically, plaintiffs argue that the Supreme Court's discussion of **Withrow v. Larkin**, 421 U.S. 35, 47 (1975) alters the state of the law with regard to "when recusal is required and when it is not[.]" ([Doc. 389] at 7) (quoting **Caperton**, 129 S.Ct. at 2269 (Roberts, C.J., dissenting,)).

On August 7, 2009, both the Shepherdstown Defendants and the Jefferson Defendants filed responses [Docs. 399, 400]. In their responses, defendants argue that plaintiffs attribute too great a significance to **Caperton** which presents an extreme case, and which is distinguishable on its facts as the Judge in **Caperton** did not recuse himself, but participated in the decision.

## CONCLUSIONS OF LAW

**I. Procedural Posture of Case and Rule 60(b) Standard**

In the Fourth Circuit, litigants are permitted to file Rule 60(b) "motions in the district court even while an appeal is pending," so long as the motion is "'in aid of the appeal.'" **Fobian v. Storage Technology Corp.**, 164 F.3d 888, 889-90 (4th Cir. 1999) (quoting **In**

*re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991)). The Fourth Circuit has described the procedural intricacies of a Rule 60(b) motion brought while an appeal is pending, as follows:

> In sum, when a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion, and should do so promptly. If the district court determines that the motion is meritless, as experience demonstrates is often the case, the court should deny the motion forthwith; any appeal from the denial can be consolidated with the appeal from the underlying order. If the district court is inclined to grant the motion, it should issue a short memorandum so stating. The movant can then request a limited remand from this court for that purpose.

*Fobian*, 164 F.3d at 891. Accordingly, this Court will entertain plaintiffs' motion asserted in aid of appeal.

Rule 60(b)(6) states:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> ....
>
> (6) any other reason that justifies relief.

Courts have defined the standard for granting a Rule 60(b)(6) as follows:

> While Rule 60(b)(1)-(5) enumerate specific narrow circumstances in which relief from judgment can be granted, Rule 60(b)(6) is a catchall provision that permits courts to reopen a final judgment for "any other reason justifying relief from the operation of the judgment." In this circuit, Rule 60(b)(6) has been interpreted narrowly, granting relief only

3

> under "extraordinary circumstances" *See e.g.,* ***Reid v. Angelone***, 369 F.3d 363, 370 (4th Cir. 2004); ***Valero Terrestrial Corp. v. Paige***, 211 F.3d 112, 118 n.2 (4th Cir. 2000). The decision to grant or deny a Rule 60(b)(6) motion is committed to the court's discretion. *See* ***Plaut v. Spendthrift, Inc.***, 507 U.S. 380, 393 (1993).

***Miller v. Jack***, 2007 U.S. Dist. Lexis 56939 at *2 n. 2 (N.D.W.Va., August 3, 2007).

## II.     *Caperton* Does Not Merit Amendment of This Court's Previous Ruling

Plaintiffs argue the United States Supreme Court decision in ***Caperton v. A.T. Massey Coal Co., Inc.***, __ U.S.__, 129 S.Ct. 2252 (June 8, 2009) represents a new standard with regard to when a judge or adjudicator is constitutionally required to recuse himself from consideration of a case. [Doc. 398]. As such, plaintiffs' motion asks this Court to revisit whether defendant William Lewandowski unlawfully biased the Jefferson County Planning Commission when he spoke during a procedural hearing on Plaintiffs' remanded application for a conditional use permit (CUP). The Court finds for the reasons set out below that the *Caperton* decision, although clarifying the point at which potential judicial bias constitutes a violation of Due Process, has no effect on this Court's reasoning or its decision as set out in its April 14, 2009 Order.

Plaintiff's motion is based on two points: (1) that *Caperton* changed the law; and (2) that as a result of that change in law there is a material issue of fact as to whether defendant William Lewandowski biased the Jefferson County Planning Commission to the point that plaintiffs were denied Due Process. Plaintiffs' arguments fail on both points.

Plaintiffs argue in their motion that the objective standard for determining bias as set out in ***Withrow v. Larkin***, 421 U.S. 35, 47 (1975) was misinterpreted by this Court in its April 14, 2009 Order. Specifically, plaintiffs argue that the Supreme Court's decision in

4

***Caperton*** "simultaneously expanded and clarified the rules applied by the Court in its grant of summary judgment in the present case," and that the Court should, therefore, grant plaintiffs' Rule 60(b) motion. ([Doc. 398] at 7). After review of the ***Caperton*** decision, this Court finds that while the Supreme Court may have found it appropriate to clarify the law in light of the extreme circumstances ***Caperton*** presented, it did not alter the substantive law as applied by this Court in evaluating plaintiffs' claims.

This Court applied the 'presumptions standard' as set out by the Supreme Court in ***Withrow*** in determining whether plaintiffs had presented sufficient evidence from which a jury could find that defendant William Lewandowski biased the Commission when he voiced his disfavor against plaintiffs in a commission meeting. ([Doc. 389] at 51-52). The Court in ***Withrow*** established the 'presumptions standard' in addressing a challenge to statutes which allowed the Wisconsin Medical Examining Board to hold hearings on whether a physician's license should be suspended. The case arose out of an investigation done by Board members, and the ***Withrow*** plaintiff argued that allowing the Board Members to hear the case violated his Due Process rights because the Board Members could not qualify as independent decision makers, since they were the also the investigating parties that decided to bring the case. The District Court preliminarily enjoined the Board from enforcing the statutes against the plaintiff, finding it to be a denial of Due Process for the Board to suspend plaintiff's license at its own hearing on charges which were brought by the Board. The Supreme Court reversed, finding it unlikely on the face of the record that plaintiff would prevail on his Due Process clam. The Court in ***Withrow*** stated:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional

5

> risk of bias in administrative adjudication has a much more
> difficult burden of persuasion to carry. It must overcome a
> presumption of honesty and integrity in those serving as
> adjudicators; and it must convince that, under a realistic
> appraisal of psychological tendencies and human weakness,
> conferring investigative and adjudicative powers on the same
> individuals poses such a risk of actual bias or prejudgment that
> the practice must be forbidden if the guarantee of Due Process
> is to be adequately implemented.

421 U.S. at 47. Plaintiff argues this standard was "expanded and clarified" by the *Caperton* decision when it held:

> The inquiry is an objective one. The Court asks not whether the
> judge is actually, subjectively biased, but whether the average
> judge in his position is "likely" to be neutral, or whether there is
> an unconstitutional "potential for bias."

__ U.S.__, 129 S.Ct. at 2262. It is difficult for this Court to see how that statement changes the standard as set out in *Withrow*. The Court in *Withrow* likewise advocated an objective inquiry: one that requires the Court to look at each member of the adjudicative panel, make "a realistic appraisal of psychological tendencies and human weakness," and determine if "conferring investigative and adjudicative powers on the same individuals" might lead to an unconstitutional deprivation of Due Process. Additionally, the *Withrow* Court instructed the lower courts that the objective inquiry should be made in light of the "presumption of honesty and integrity in those serving as adjudicators."

To the extent that plaintiff is arguing that *Caperton* establishes a "new" standard because it does away with the presumption of honesty and integrity in those serving as adjudicators, this Court finds plaintiffs' arguments unpersuasive. In *Caperton*, the Court was addressing an extreme set of facts involving a judge who participated in the hearing,

6

deliberation, and decision regarding review of a $50,000,000 verdict against a corporation whose CEO spent an inordinate amount of money to help elect that judge. The Supreme Court in *Caperton* noted the extreme nature of the case and found:

> there is a serious risk of actual bias -- based on objective and reasonable perceptions -- when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent...

129 S.Ct. at 2263-64. Thus, the Supreme Court points to the fact that when a judge is confronted with a case in which he may not have a direct pecuniary interest, but one in which "a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign," the "objective and reasonable perceptions" weigh so heavily in favor of a finding of "a serious risk of actual bias" that it ends the inquiry. The Court in *Caperton*, therefore, had no reason to weigh the "objective and reasonable perceptions" against the "presumption of honesty and integrity in those serving as adjudicators."

Plaintiffs take the Supreme Court's holding in *Caperton* and stretches it to its extreme. Plaintiffs argue that the facts of *Caperton* are analogous to the case at bar because defendant William Lewandowski was biased, made statements to that effect in front of other members, and, therefore, there is a material issue of fact as to whether the other members were biased by his statements. If this Court were to accept plaintiffs' interpretation of *Caperton*, there would not be a judge or counsel in this country which could not be impugned. (See [Doc. 398] at 14, where plaintiff argues: "even if the justice had recused himself when the case actually came before the Court, the objective potential

7

for bias would still be overwhelming, and thus disqualifying, as to the justice and very possibly to his brethren, as well.")  There is always some possibility that something said in front of–or to–some judge or member of an adjudicative body that could bias that individual. The justice system, however, is founded on the ability of those individuals–and jurors–to put aside their own potential bias and look at the facts and the law.  The system is set up with the "presumption of honesty and integrity in those serving as adjudicators." *Withrow*, 421 U.S. at 47.

Here, plaintiffs' claims amount to a bald assertion that because defendant William Lewandowski spoke against plaintiffs in a commission meeting and initially refused to recuse himself, that the objective potential for bias of all the other members is a question for the jury.  Such a proposition is absurd.  Plaintiffs' sheer allegations that the members were biased, and the commission's refusal to grant plaintiffs' permit application, does not amount to a material issue of fact.  In order to withstand summary judgment a plaintiff must present more than a scintilla of evidence to support their case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 252 (1986).   Plaintiffs have presented the Court with nothing to show that upon objective consideration the commission members were "likely" to be anything other than neutral.

B.     *Caperton* is factually Distinguishable from the Case at Bar

Additionally, the scenario presented in *Caperton* is factually distinguishable from the above-styled case.  As discussed above, *Caperton* came about when a political candidate for the State's highest court was supported by the CEO of a major corporation. The CEO spent an amount equal to three (3) times as much money as the candidate himself spent in that political effort.  The major corporation had a $50,000,000 verdict against it which

was poised to be reviewed by the very court to which the judicial candidate aspired to be elected. Once elected, Justice Benjamin in the underlying case in *Caperton* did not recuse himself, participated in the deliberation and decision concerning the merits of the appeal, and then presided as the acting Chief Justice over the rehearing of the appeal. *Caperton*, 129 S.Ct. at 2257-59. In contrast, here, defendant William Lewandowski did recuse himself. In the Order Granting Summary Judgment [Doc. 389], this Court specifically made a finding of fact that Defendant William Lewandowski , after consultation with counsel, recused himself from hearing, discussing, or deciding plaintiffs' application for a CUP. (Undisputed Material Fact 46 [Doc. 389] at 20-21). Thus, the factual situations present in *Caperton* and the instant case are markedly distinct.

In this Court's previous order [Doc. 389], the Court held that plaintiffs failed to overcome the *Withrow* 'presumptions standard' with respect to the members of the panel who actually considered, deliberated, and made the decision on the CUP application. In their motion, however, plaintiffs appear to assert that because the *Caperton* Court did not mention the *Withrow* 'presumptions standard,' it only follows that the *Caperton* Court established a new standard to be applied to administrative tribunals in situations such as the present. Plaintiffs' logic is counterintuitive. In fact, it is precisely because the issue of the probability of bias on the part of members of an administrative tribunal *after one member has recused himself* was not before the Court in *Caperton* that the decision in not instructive in the instant action.

Additionally, plaintiffs have provided this Court with no support for their contention that the bias of defendant William Lewandowski somehow unconstitutionally tainted the process, even though he recused himself. Plaintiffs' continued reliance upon *Stivers v.*

***Pierce***, 71 F.3d 732 (9th Cir. 1995) is misplaced and redundant; and their citation to ***Howell v. Marion Sch. Dist. One***, 2009 U.S. Dist. LEXIS 22723 (D.S.C., March 19, 2009), is likewise inapposite. The holdings in both cases are still limited to situations where an allegedly biased panel member participated in the *deliberations and/or decisions made*. Here, defendant William Lewandowski did not participate in any hearing, deliberation, or vote with regard to the Plaintiffs' CUP application. ([Doc. 389] at 51-52). Nothing cited by plaintiffs in their Motion calls this finding or its import into question. As such, this Court's previous holding makes any reference to ***Caperton*** moot. (*See* [Doc. 389] at 51-52).

Moreover, ***Stivers*** and ***Howell*** note that an adverse decision is not enough to make a constitutional case of bias against an administrative tribunal. This Court concluded that, "there is no evidence that [defendant William Lewandowski's comments] had any impact." ([Doc. 389] at 50). Simply put, this Court has already concluded that plaintiffs have not come forward with sufficient evidence from which a fact-finder can deduce a "probability of bias" on the part of the Jefferson County Planning Commission in its January 11, 2005, decision to issue a CUP for fourteen (14) units to plaintiffs, and ***Caperton*** has done nothing to alter this Court's analysis.

## CONCLUSION

Based on the foregoing reasoning, this Court finds Plaintiffs' Motion to Vacate Judgment [Doc. 398] should be, and hereby is, **DENIED**.

It is so **ORDERED.**

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED:** September 2, 2009

/s/ John Preston Bailey
JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE